No. 14-1281

IN THE

# United States Court of Appeals

### FOR THE FIRST CIRCUIT

_____

NORA M. BARRAFORD, individually and as Executrix of the Estate of Daniel M. Barraford; THE FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST,

*Plaintiffs–Appellants*,

_____

KATHERINE LYDON, individually and as Executrix of the Estate of John T. Lydon, Jr.,

*Plaintiff*,

v.

T&N LIMITED, f/k/a T&N PLC, f/k/a TURNER & NEWELL PLC, f/k/a TURNER & NEWELL LIMITED; TAF INTERNATIONAL LIMITED, f/k/a TURNERS ASBESTOS FIBRES LIMITED, f/k/a RAW ASBESTOS DISTRIBUTORS LIMITED,

*Defendants–Appellees.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS NORA M. BARRAFORD AND THE FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST

Richard Levin
Rowan D. Wilson
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiffs-Appellants Nora M. Barraford and The Federal-Mogul Asbestos Personal Injury Trust*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT ........................................................................................................ 3

I.     THE BANKRUPTCY CODE PERMITS A PLAN TO PROVIDE
       MORE THAN ONE DISCHARGE ............................................................. 3

II.    THE PLAN WILL GRANT T&N A SEPARATE DISCHARGE OF
       ASBESTOS PERSONAL INJURY CLAIMS ONLY ON THE
       HERCULES POLICY EXPIRY DATE ......................................................... 5

III.   THE AUTOMATIC STAY REMAINS IN EFFECT AS TO UN-
       DISCHARGED CLAIMS UNTIL DISCHARGE .......................................... 8

IV.    SECTION 108(C)(2)'S GRACE PERIOD FOR A CLAIM RUNS
       ONLY UPON TERMINATION OF THE AUTOMATIC STAY
       WITH RESPECT TO THAT CLAIM .......................................................... 12

V.     THE PLAN MODIFIED THE AUTOMATIC STAY TO PERMIT
       THE TRUST TO PURSUE ACTIONS AGAINST T&N ............................. 14

       A.     The Trust Did Not Waive The Stay Modification Argument. ........... 14

       B.     The Plan Modified The Automatic Stay ............................................ 15

VI.    THE PLAN DOES NOT ELIMINATE ALL TIMELINESS
       DEFENSES ................................................................................................. 19

VII.   THE PLAN SET UP A STRUCTURE TO PRESERVE LIABILITY
       FOR THOUSANDS OF CLAIMS, NOT TO GUARANTEE THEY
       WOULD LAPSE .......................................................................................... 21

CONCLUSION ..................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*,
  34 F.3d 800 (9th Cir. 1994) ...................................................................22

*Allied Tech., Inc. v. R.B. Brunemann & Sons, Inc.*,
  25 B.R. 484 (Bankr. S.D. Ohio 1982) ...................................................11, 12, 13

*Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*,
  374 F.3d 23 (1st Cir. 2004)...................................................................5

*Boston Gas Co. v. Century Indem. Co.*,
  708 F.3d 254 (1st Cir. 2013)...................................................................5

*Brenes v. U.S. Lines, Inc. (In re U.S. Lines, Inc.)*,
  128 B.R. 339 (S.D.N.Y. 1991) ...................................................................11

*Casperone v. Landmark Oil & Gas Corp.*,
  819 F.2d 112 (5th Cir. 1987) ...................................................................17, 18

*In re Charlie Auto Sales, Inc.*,
  336 F.3d 34 (1st Cir. 2003)...................................................................17

*Cochran v. Quest Software, Inc.*,
  328 F.3d 1 (1st Cir. 2003)...................................................................14, 15

*Cunningham v. Healthco, Inc.*,
  824 F.2d 1448 (5th Cir. 1987) ...................................................................4

*Dep't of Air Force v. Carolina Parachute Corp.*,
  907 F.2d 1469 (4th Cir. 1990) ...................................................................7

*E. Refractories Co. v. Forty Eight Insulations Inc.*,
  157 F.3d 169 (2d Cir. 1998) ...................................................................18

*In re Estes*,
  15 B.R. 25 (Bankr. S.D. Ohio 1981) ...................................................................10

*Fish Mkt. Nominee Corp. v. Pelofsky*,
    72 F.3d 4 (1st Cir. 1995)...................................................................11

*In re Fortner Oil Field Servs., Inc.*,
    49 B.R. 9 (Bankr. N.D. Tex. 1984)..................................................13

*Freakley v. Centre Reins. Int'l Co.*,
    2004 WL 2775879, [2004] EWHC 2740 (Ch) (Case No. 5798 of 2001,
    High Court of Eng. & Wales, Nov. 26, 2004)...................................20

*In re Hahn*,
    60 B.R. 69 (Bankr. D. Minn. 1985)..................................................10

*Hillis Motors, Inc. v. Haw. Auto. Dealers' Ass'n*,
    997 F.2d 581 (9th Cir. 1993) ...........................................4, 7, 16, 22

*In re Liberty Fibers Corp.*,
    No. 07-5043, 2008 WL 2368206 (Bankr. E.D. Tenn. June 6, 2008) ...............18

*In re Meredith*,
    337 B.R. 574 (Bankr. E.D. Va. 2005)...............................................18

*In re Motor Vehicles Canadian Exp. Antitrust Litig.*,
    533 F.3d 1 (1st Cir. 2008)...............................................................14

*Murphy v. Timberlane Reg'l Sch. Dist.*,
    22 F.3d 1186 (1st Cir. 1994)............................................................21

*Nat'l Ass'n of Soc. Workers v. Harwood*,
    69 F.3d 622 (1st Cir. 1995).............................................................15

*Niehoff v. Maynard*,
    299 F.3d 41 (1st Cir. 2002).............................................................21

*In re Pettibone*,
    110 B.R. 848 (Bankr. N.D. Ill. 1990) ..............................................18

*Polar Tankers, Inc. v. City of Valdez*,
    557 U.S. 1 (2009)...........................................................................15

*In re Porras*,
　　312 B.R. 81 (Bankr. W.D. Tex. 2004)...............................................................16

*In re Reisher*,
　　149 B.R. 372 (Bankr. M.D. Pa. 1992) ...............................................................7

*Singleton v. Wulff*,
　　428 U.S. 106 (1976)..........................................................................................15

*Skywark v. U.S. Lines, Inc.*,
　　No. 92 Civ. 8179, 1994 WL 494864 (S.D.N.Y. Sept. 9, 1994).........................11

*Travelers Indem. Co. v. Bailey*,
　　557 U.S. 137 (2009)............................................................................................5

*U.S. Lines, Inc. v. U.S. Lines Reorganization Trust*,
　　262 B.R. 223 (S.D.N.Y. 2001) .........................................................................11

*United States v. Energy Resources Co.*,
　　495 U.S. 545 (1990)..........................................................................................16

*United States v. White*,
　　466 F.3d 1241 (11th Cir. 2006) ..........................................................................3

*In re Wright*,
　　No. 99-11829, 2000 WL 1672322 (Bankr. N.D. Cal. Sept. 15, 2000)..............16

## Statutes & Rules

11 U.S.C. § 108 ...............................................................................................passim

11 U.S.C. § 362 ...............................................................................................passim

11 U.S.C. § 524 ..............................................................................................24, 25

11 U.S.C. § 1123 .............................................................................................9, 15

11 U.S.C. § 1141 .........................................................................................1, 4, 13

**Other Authorities**

3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. Alan N. Resnick & Henry J. Sommers, eds. 2014)............................................................................24

Jeffrey W. Stempel, *Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute*, 12 CONN. INS. L.J. 349, 424-48 (2006)........................................................................20

## PRELIMINARY STATEMENT

To emerge from bankruptcy, T&N proposed a plan under which holders of asbestos personal injury claims against T&N appointed the Trust as their agent to assert their claims, which "shall be allowed to proceed in the ordinary course to judgment." (Plan §§ 4.5.8(a), (f)(ii), A612-13.) That is, T&N expressly agreed to be sued, despite any bankruptcy protections that it might otherwise enjoy. It was no secret that the purpose of these provisions was to allow access to the Hercules Policy. The bankruptcy court confirmed the Plan, making it binding on T&N and all other parties in interest, including the Hercules Policy Reinsurers. *See* § 1141(a); Conf. Order ¶ D, at 3, A783.[1]

With the Reinsurers controlling T&N's defense of this action, T&N now attempts to unwind, as to thousands of claims, the deal that the Plan embodies. T&N argues that the Plan does not really implement the deal but that even if it did, the Bankruptcy Code does not permit the Plan to work as all parties to the reorganization intended. If the Plan implements the deal, then neither T&N nor the Reinsurers may collaterally attack the order confirming the Plan. The confirmation order is a ruling that the Plan provisions were proper, and neither that order nor the Plan provisions that it approved are subject to collateral attack. T&N's attempt to

---

[1] All section references are to sections of the Bankruptcy Code, 11 U.S.C. § ___, unless otherwise specified.

1

undo the confirmed Plan it proposed fails regardless, though, because the Trust has shown that the Bankruptcy Code permits the implementation of the deal that T&N made to emerge from bankruptcy.

T&N's Brief brings into focus the three questions that are central to this case:

- Does the Bankruptcy Code permit the Plan to provide for a discharge of some claims later than the Effective Date?

- If so, did the Plan grant the discharge of T&N's Asbestos Personal Injury Claims on a date later than the Effective Date?

- If so, does the automatic stay remain in effect for the un-discharged claims until the discharge actually occurs?

The answer to all three questions is "*yes*." The Bankruptcy Code's flexible plan confirmation and discharge provisions permit a staged or deferred discharge, as T&N acknowledges. The Plan expressly deferred the grant of a discharge of T&N Asbestos Personal Injury Claims until *after* the Effective Date, on the Hercules Policy Expiry Date. And the automatic stay remains in effect for un-discharged claims until they are actually discharged, so that the statute of limitations to bring those claims did not expire 30 days after the Plan's Effective Date.

## ARGUMENT

## I.   THE BANKRUPTCY CODE PERMITS A PLAN TO PROVIDE MORE THAN ONE DISCHARGE

In its opening brief, the Trust argued that a chapter 11 plan may provide different discharge dates for different classes of claims. (Trust Br. at 25-29.) T&N characterizes this as "a proposition that is not in dispute—namely, that the Plan's deferred-discharge treatment of certain asbestos claims in Article IV is consistent with the Bankruptcy Code." (T&N Br. at 32.) T&N then argues that the Plan did not really defer discharge of certain asbestos claims, but rather granted an immediate discharge of all claims and deferred its effectiveness as to some claims. (*Id*.) As shown below, the Plan directly answers that mischaracterization. But T&N's mischaracterization of its own Plan does not negate its agreement that the Bankruptcy Code permits a plan to provide separate, deferred discharges for different classes of claims.

Despite that agreement, T&N attempts to reserve the argument that a discharge occurs only upon confirmation and may not occur later, citing *United States v. White*, 466 F.3d 1241, 1246 (11th Cir. 2006). (T&N Br. at 29 n.2; *see also id*. at 31, 34-35.) *White* does not stand for so sweeping a proposition, and most of what T&N cites is dicta. As the court noted, "[t]he plan did not contain any provisions explicitly stating that the discharge would take place after confirmation." *Id*. *White* is also not the law in this Circuit, which has not yet

3

addressed the question raised here, and other Circuits appear to hold to the contrary. In *Hillis Motors, Inc. v. Hawaii Automobile Dealers' Association*, 997 F.2d 581, 587-89 (9th Cir. 1993), the Ninth Circuit expressly enforced a plan provision that deferred revesting property of the estate in the debtor under the exception in section 1141(b) that property of the estate revests upon confirmation "except as provided in the plan or the order confirming the plan;" and because the plan deferred discharge under the same "[e]xcept as otherwise provided … in the plan" provision of section 1141(d), the stay remained in place. The Fifth Circuit did likewise as to revesting. *Cunningham v. Healthco, Inc.*, 824 F.2d 1448, 1460 (5th Cir. 1987) (plan provided that debtor's cash recoveries from litigation were to remain under the supervision of the bankruptcy court and were property of the estate).

Even if *White* were the law in this Circuit, and held what T&N claims it did, T&N may not now argue that it governs this case. If, as shown below, the Plan expressly provided for discharge of all claims other than T&N Asbestos Personal Injury Claims on the Effective Date, and of all T&N Asbestos Personal Injury Claims later, on the Hercules Policy Expiry Date (Plan §§ 4.5.20(a)(ii), 9.1.1, A622, A661-62), then the bankruptcy court order confirming the plan would be binding on T&N, even if the Bankruptcy Code did not authorize the provision. A provision in a confirmed plan is not subject to collateral attack, even where it

4

exceeds the bankruptcy court's subject matter jurisdiction. *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 152-53 (2009). In addition, if and to the extent T&N is attempting to assert the invalidity of any provision in the Plan that it proposed and that the bankruptcy court confirmed at T&N's urging, it is judicially estopped from doing so. *Boston Gas Co. v. Century Indem. Co.*, 708 F.3d 254, 261 (1st Cir. 2013). The judicial estoppel requirements would be met here: "the estopping position and the estopped position must be directly inconsistent, that is, mutually exclusive," and "the responsible party must have succeeded in persuading a court to accept its prior position." *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 33 (1st Cir. 2004).

## II. THE PLAN WILL GRANT T&N A SEPARATE DISCHARGE OF ASBESTOS PERSONAL INJURY CLAIMS ONLY ON THE HERCULES POLICY EXPIRY DATE

To implement the deal that T&N proposed, the Plan had to withhold (not deny) discharge until the Hercules Policy Expiry Date. T&N's Brief asserts that the Plan granted the discharge on the Effective Date, with only its effectiveness deferred:

- "The T&N Entities were granted a discharge, with the effectiveness of that discharge as to the Asbestos Personal Injury Claims being deferred." (T&N Br. at 32.)

5

- "The Plan granted the T&N Entities both a general discharge … *and* a discharge from Asbestos Personal Injury Claims, which will go into effect automatically and without further court order when the Hercules Policy is exhausted or no longer available." (*Id.* at 36.)

- "The discharge will become full and final at a certain future point—without the need for any additional judicial action .… [E]ven if the Trust were correct that a grant or denial of a discharge for the specific claims at issue is necessary for the automatic stay to expire, the Plan makes clear that this has already occurred." (*Id.* at 37-38.)

However, Plan sections 4.5.6—whose language T&N does not quote or discuss— and 4.5.20(a)(ii) say otherwise:

- "On and from the Effective Date *until discharge and release under Section 4.5.20* of the Plan, any liability of [T&N] for Asbestos Personal Injury Claims … shall continue in full." (Plan § 4.5.6, A611 (emphasis added).)

- "From and after the Hercules Policy Expiry Date … (ii) the Reorganized Hercules-Protected Entities shall automatically and without further order of the court be discharged and

6

released from any and all liability with respect to Asbestos

Personal Injury Claims ….." (Plan § 4.5.20(a)(ii), A622.)

The statement that T&N's liability for asbestos claims continues in full "until

discharge" forecloses T&N's interpretation. If discharge really had been granted,

but deferred, § 4.5.6's use of "until discharge" would not make sense. The Plan

"specifically contemplated that any discharge … would occur in the future" for

asbestos claims, and that the automatic stay would remain in place for those claims

until that time—in contrast to the typical case, where a discharge of all claims

occurs and stay protection is lost upon confirmation. *Hillis Motors*, 997 F.2d at 589

(alteration and quotations omitted) (citing *Dep't of Air Force v. Carolina*

*Parachute Corp.*, 907 F.2d 1469, 1474 (4th Cir. 1990), on which T&N relies for

the proposition that confirmation and discharge lift the automatic stay (T&N Br. at

35), as an example of the "typical[]" case); *see also In re Reisher*, 149 B.R. 372,

374 (Bankr. M.D. Pa. 1992).

T&N also asserts that "the Plan immediately discharged the T&N

Entities from any claims that Mrs. Barraford and others similarly situated could

have brought in their own right," by reason of "Plan terms [that] make clear that

the T&N Entities will not be liable from their own funds [for] any asbestos

claims." (T&N Br. at 37.) However, Plan § 4.5.6 says the opposite: T&N's liability

"for Asbestos Personal Injury Claims" held by claimants like Mrs. Barraford "shall

continue in full" "until discharge and release under Section 4.5.20 of the Plan."

(A611.) Moreover, discharge addresses T&N's "liability … for Asbestos Personal

Injury Claims," not how T&N satisfies any such liability. (*Id.*) That is the entire

purpose of Section 4.5 of the Plan, which ensures the Trust's access to Hercules

Policy proceeds by maintaining T&N's continued liability for asbestos claims—

neither granting nor denying a discharge—while ensuring that judgment amounts

are ultimately paid with Policy proceeds, thus shielding T&N from further asbestos

exposure and allowing it to exit bankruptcy. That provides a benefit to T&N and its

creditors, but it is not a "discharge" under the Bankruptcy Code or the terms of the

Plan.

## III.    THE AUTOMATIC STAY REMAINS IN EFFECT AS TO UN-DISCHARGED CLAIMS UNTIL DISCHARGE

T&N's disagreement with the Trust centers on the effect of the first

discharge in the case. It argues throughout its Brief that "a" discharge of some

claims terminates the automatic stay as to all claims in a bankruptcy case. Such a

result would add unwarranted limitations to the relevant Bankruptcy Code

provisions. As explained in the opening brief (Trust Br. at 22-25), the automatic

stay and the discharge are complementary mechanisms under the Bankruptcy

Code—each applies claim by claim to protect both creditors' rights and the

debtor's estate—and so must be applied in a complementary and coordinated

fashion to permit the discharge of some claims and the release of the automatic

stay as to those claims, while deferring a discharge of other claims and leaving the automatic stay in place for those other claims. The language and structure of section 362 and related Code provisions support this interpretation.

First, although T&N recognizes that the automatic stay may terminate as to some claims on a claim-by-claim basis, it argues that *only* section 362(d) permits such treatment. (T&N Br. at 30, 49-50.) It provides no statutory text or case law to support such a narrow reading of the mechanisms the Bankruptcy Code permits for releasing some claims from the automatic stay. For example, chapter 11 permits a plan to include any provision not inconsistent with the Bankruptcy Code. § 1123(b)(6). Nothing in section 362(d) prohibits a reorganization plan from addressing the stay, as the Plan did here.

Second, T&N's construction would render useless the Bankruptcy Code's allowance in chapter 11 of separate discharges for separate classes of creditors. If the discharge of some claims terminated the automatic stay as to all other claims, a reorganizing debtor would be left completely unprotected pending the discharge of the other claims, because the discharge injunction applies only to discharged claims. Staged discharges would be rendered ineffective. That is not how the Code operates: rather, the automatic stay and the discharge injunction work together to provide seamless protection to a debtor, the latter taking effect upon the discharge, which terminates the former.

9

Third, section 362(c)'s language shows that automatic stay expiration is not "unitary" in every circumstance. (T&N Br. at 23.) Section 362(c) refers to the stay in relation to each individual act that is stayed: "(1) the stay of *an act* against property of the estate … continues until such property is no longer property of the estate; [and] (2) the stay *of any other act* under subsection (a) … continues until the earliest of … (C) ... the time *a discharge* is granted or denied." § 362(c) (emphases added). Thus, within section 362(c) itself, "the stay" is not a monolith; each individual "act" is subject to "the stay" of that act. Similarly, section 362(c)(1) makes clear that "the stay of an act against property of the estate" ends when that particular property is no longer property of the estate—*i.e.*, the stay of some acts against estate property may end without lifting the stay as to all such acts or as to any other individual act. *In re Hahn*, 60 B.R. 69, 76-77 (Bankr. D. Minn. 1985); *In re Estes*, 15 B.R. 25, 27 (Bankr. S.D. Ohio 1981). Nothing suggests that section 362(c)(2)(C) does not work the same way.

The statutory text's flexibility makes clear that the automatic stay does not operate like a single "light switch" that is either "on" or "off" as to all claims. (T&N Br. at 23.) At the risk of pushing the analogy too far, the stay functions more like a bank of switches that are all turned on at the same time—upon the filing of a bankruptcy petition—but that can be switched off one at a time, at the discretion of the bankruptcy court, whether under section 362(d)'s stay

10

relief provision or otherwise. In most chapter 11 cases, staged discharges are not used because they are not necessary, and so the single discharge of all claims terminates the automatic stay as to all claims. That does not mean that in a case with staged discharges, the automatic stay terminates as to all claims upon the first discharge. T&N's selective quotation from *Fish Market Nominee Corp. v. Pelofsky*, 72 F.3d 4, 6 (1st Cir. 1995), is not to the contrary; the case holds, uncontroversially, that the automatic stay expires on the entry of a judgment dismissing the chapter 11 case, an event that has not occurred here.

The only reported case to address this question directly, *Allied Technology, Inc. v. R.B. Brunemann & Sons, Inc.*, 25 B.R. 484 (Bankr. S.D. Ohio 1982),[2] reflects this principle, contrary to T&N's reading of the case. The *Allied* court granted the debtor a discharge upon plan confirmation but held in abeyance the discharge of claims "by specifying that this Court will retain jurisdiction to hear and determine all claims against Allied [and] by reserving the questions

---

[2] The United States Lines, Inc. chapter 11 court addressed the issue indirectly by extending, after plan confirmation, the automatic stay as to asbestos personal injury claims until termination of the asbestos personal injury trust created under the plan in that case. *See Brenes v. U.S. Lines, Inc. (In re U.S. Lines, Inc.)*, 128 B.R. 339, 340 (S.D.N.Y. 1991). In subsequent decisions coming out of the United States Lines reorganization, the courts applied section 108(c)(2)'s 30-day grace period from notice of termination of that stay, but none of those decisions questioned the bankruptcy court's authority to extend the stay or the effectiveness of the order doing so. *See Skywark v. U.S. Lines, Inc.*, No. 92 Civ. 8179, 1994 WL 494864 (S.D.N.Y. Sept. 9, 1994), *aff'd,* 57 F.3d 1064 (2d Cir. 1995); *cf. U.S. Lines, Inc. v. U.S. Lines Reorganization Trust*, 262 B.R. 223, 235 (S.D.N.Y. 2001).

within Debtor's Application to assume the subject lease for this Court's post-confirmation resolution, thus holding in abeyance the discharge of those [lease] claims to be resolved within the Application." 25 B.R. at 501. As to those claims, the court held that the creditor's state court action violated the automatic stay. "[S]ince this claim has not yet been discharged … the automatic stay … has therefore been in effect continuously since commencement of the instant bankruptcy case." *Id.* at 501.

## IV. SECTION 108(C)(2)'S GRACE PERIOD FOR A CLAIM RUNS ONLY UPON TERMINATION OF THE AUTOMATIC STAY WITH RESPECT TO THAT CLAIM

Section 362's claim-by-claim application of the automatic stay, and the possibility that it allows for claim-by-claim stay termination based on the scope of a discharge, are echoed in the complementary language of section 108(c)(2), which provides that an underlying statute of limitations for "a claim against the debtor, or against an individual" does not expire until "30 days after notice of the termination or expiration of the stay under section 362 … *with respect to such claim*." Nothing in section 108(c)(2) suggests that the highlighted language's limitation applies only to termination of the stay under section 362(d) upon a motion for stay relief. To the contrary, the triggering "termination or expiration" event in section 108(c)(2) is unqualified as to source. Where a plan defers a discharge of some claims, the highlighted language supports reading termination of

12

the stay under section 362(c) to apply on a claim-by-claim basis. Thus, when discharge as to a class of claims is neither granted nor denied, as was the case here, the stay remains in place as to that class of claims to protect the debtor and prevent the statute of limitations from running.

T&N's argument that the phrase "with respect to such claim" in section 108(c)(2) was included because "each non-discharged claim could have a different state or federal limitations period" (T&N Br. at 40) does not make grammatical or structural sense. "[W]ith respect to such claim" directly modifies "notice of the termination or expiration of the stay." § 108(c)(2). The phrase has no logical connection to the different underlying statutes of limitations for the various claims that may be subject to a stay; the time to bring each such claim runs 30 days after notice of the termination or expiration of the stay as to that claim regardless of when the underlying statute of limitations expired.

The Bankruptcy Code as written is sufficiently flexible to permit parties to use multiple discharges when necessary, including to preserve the automatic stay and defer the start of section 108(c)(2)'s grace period. *See Allied Tech.*, 25 B.R. at 501; *see also In re Fortner Oil Field Servs., Inc.*, 49 B.R. 9, 10-11 (Bankr. N.D. Tex. 1984) (suggesting that the automatic stay may remain in place as a result of "exceptions to discharge … provided in the plan or order confirming the plan pursuant to § 1141(d)(1)"). If section 108(c)(2)'s grace period

started running upon the first discharge, the stayed creditor's statute of limitations might well expire before the deferred discharge is granted or denied and the automatic stay expires, which would deny the creditor the ability to bring the claim if the deferred discharge were later denied. T&N's argument that discharge of one or more claims lifts the stay as to all other claims would prejudice creditors, write the flexibility to allow multiple discharges out of the Code, or both, and so must be rejected.

## V.  THE PLAN MODIFIED THE AUTOMATIC STAY TO PERMIT THE TRUST TO PURSUE ACTIONS AGAINST T&N

### A.  The Trust Did Not Waive The Stay Modification Argument.

As the Trust explained in its opening brief (Trust Br. at 35-36), the Plan modified the automatic stay to allow the Trust to bring cases like Mrs. Barraford's against T&N. That the Plan modified the stay is not a new argument. It is part and parcel of the Trust's main contention below and on appeal: the Plan was consciously structured around the need to allow the Trust to bring cases like Mrs. Barraford's against T&N.

The cases T&N cites to support its forfeiture argument are easily distinguishable. *In re Motor Vehicles Canadian Export Antitrust Litigation*, 533 F.3d 1 (1st Cir. 2008), considered a new statute of limitations-based argument unrelated to the arguments asserted in the district court, and *Cochran v. Quest Software, Inc.*, 328 F.3d 1 (1st Cir. 2003), involved a novel argument based on a

14

material recharacterization of the record evidence. In contrast, the operation of the automatic stay as set out in the Plan is the central issue in the case. It was briefed and argued in the district court, and nothing in the Trust's elaboration of its argument on appeal runs afoul of this Court's precedent on waiver.

Even if T&N were correct that the Trust's explanation of the stay modification is "novel," whether to consider the argument remains within the Court's discretion. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). Here, all factors point in favor of considering the argument. Whether the Plan modified the stay is a purely legal issue and is fully briefed, and no prejudice or inequity will result from its consideration. *See Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 627-28 (1st Cir. 1995); *see also Polar Tankers, Inc. v. City of Valdez*, 557 U.S. 1, 13-14 (2009) (considering issue not adequately raised in the lower courts where "the parties have argued the matter in their briefs here; and our deciding the matter now will reduce the likelihood of further litigation").

B.    **The Plan Modified The Automatic Stay**

Section 362(d) authorizes the court to grant relief from the automatic stay "[o]n request of a party in interest and after notice and a hearing, … such as by terminating, annulling, modifying, or conditioning such stay … (1) for cause." It does not, however, prohibit the court from granting relief from the stay as part of the plan. As stated in the Trust's opening brief, "Section 1123(b)(6) permits a

15

chapter 11 plan to 'include any other appropriate provision not inconsistent with the applicable provisions of this title.'" (Trust Br. at 26 (citing *United States v. Energy Resources Co.*, 495 U.S. 545, 549 (1990)).) Although T&N argues that bankruptcy courts do not grant relief *sua sponte* or implicitly and that stay relief must be granted by an order (T&N Br. at 30, 49-50), none of those arguments prohibit stay relief under a plan. Even if section 362(d)'s requirements applied, the Plan here met them. The bankruptcy court issued an order confirming the Plan for cause, on request of party in interest T&N, after notice to all creditors of the proposed Plan and a confirmation hearing.

Thus, the issue is not whether the Plan could modify the stay but whether it did. T&N and the Trust both treated the Plan as modifying the stay—the parties litigated Mrs. Barraford's claim for two years before T&N raised this statute of limitations defense, as all parties understood that that was how the Plan was intended to function. Even if not express, the Plan provisions modifying the stay need not be unambiguous. *See Hillis Motors*, 997 F.2d at 589 (plan provision that property of the estate did not revest in the debtor was not unambiguous but was enforced); *In re Porras*, 312 B.R. 81, 94 (Bankr. W.D. Tex. 2004) (order permitting intervention implicitly modified the automatic stay); *In re Wright*, No. 99-11829, 2000 WL 1672322, at *1 (Bankr. N.D. Cal. Sept. 15, 2000) (implicit modification).

16

The stay modification that allowed the Trust to bring this action against T&N is integral to the Plan. The Plan expressly provides for such actions: "the claim of the holder of a Debtor HPE Asbestos Claim against the Reorganized Hercules-Protected Entities (acting by his agent the Trust) *shall be allowed to proceed* in the ordinary course to judgment or settlement." (Plan § 4.5.8(f)(ii), A613 (emphasis added); *see also* Plan § 9.3.2(b), A666 ("this Third Party Injunction shall not impair … (ii) the rights of the Trust … to assert such Asbestos Personal Injury Claims solely against Hercules-Protected Entities in accordance with Article IV of the Plan").) Such a direct authorization could be carried out only by bringing actions like the one here, which the Plan and the confirmation order expressly authorized. Nothing in the Bankruptcy Code requires the addition of talismanic words like "*the stay is modified so that* the claim … shall be allowed to proceed in the ordinary court to judgment or settlement," especially where the procedure is integral to the agreement that allowed T&N to emerge from bankruptcy.

The cases T&N cites for the proposition that stay relief orders require explicit language are not on point. The issue in *In re Charlie Auto Sales, Inc.*, 336 F.3d 34, 36-37 (1st Cir. 2003), was what actions the stay relief order permitted the creditor to take, not whether the order granted stay relief. *Casperone v. Landmark Oil & Gas Corp.*, 819 F.2d 112 (5th Cir. 1987), addressed the same issue, holding

17

that a stay relief order that permitted only liquidation of a claim did not also permit a dischargeability determination. And *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169 (2d Cir. 1998), also addressed only the scope of a stay relief order, *i.e.*, whether it should be construed as retroactive rather than only as prospective. The question here is not how or how broadly to read a stay relief order, but whether the Plan granted stay relief at all, which it did.

Similarly, the cases T&N cites for the proposition that *any* stay relief (not just termination or expiration) starts section 108(c)(2)'s grace period do not require dismissal of this action. *In re Liberty Fibers Corp.*, No. 07-5043, 2008 WL 2368206 (Bankr. E.D. Tenn. June 6, 2008), *In re Meredith*, 337 B.R. 574 (Bankr. E.D. Va. 2005), and *In re Pettibone*, 110 B.R. 848 (Bankr. N.D. Ill. 1990), do not explain and therefore do not address the issue presented here, which is whether modification, as opposed to "termination or expiration" of the stay, triggered section 108(c)(2), and none of them are binding on this Court.

Here, the Plan modified (but did not terminate) the automatic stay for all Asbestos Personal Injury Claims, on a claim-by-claim basis as necessary to allow the Trust to file suit on each claimant's behalf in the tort system and "to proceed in the ordinary course to judgment or settlement." T&N cites no authority that would forbid the Plan from working this way. In the cases it relies on, an order lifting the stay as to a single claim started the 30-day clock as to when that claim

18

must be filed; the lift stay order did not start the clock running as to all other stayed claims in the case. Here, the stay modification allows the Trust to file suit on a claim-by-claim basis. The stay as to the claims for which suit has not yet been filed continues in place.

T&N itself proposed and advocated confirmation of the Plan. All parties in interest, including T&N and the Reinsurers, were on notice of the Plan's terms, including its deferred discharge provisions, its extension of the automatic stay for asbestos claims, and its directive that the Trust bring those claims against T&N in the tort system. T&N cannot now be heard to complain that it was unaware of how the Plan it wrote would function.

## VI.  THE PLAN DOES NOT ELIMINATE ALL TIMELINESS DEFENSES

The Plan preserves T&N's "right to assert any defenses, counterclaims, offsets, rights of contribution or any other rights and remedies for the purpose of reducing or defeating their liability for any" asbestos claims. (Plan § 4.5.8(e), A613.) T&N would have a valid defense if the statute of limitations on Mrs. Barraford's claim were not extended. But the Bankruptcy Code extends the limitations period, and so while T&N has the "right to assert any defenses," including a statute of limitations defense, that particular defense is available upon discharge of the Asbestos Personal Injury Claims, termination of the automatic stay as to those claims, and the running of section 108(c)(2)'s grace period. There

is nothing inequitable about that. It is deferred, just as it was before Plan confirmation.

In any event, the Trust has no incentive to "sit on its rights indefinitely." (T&N Br. at 55.) The Trust, acting on behalf of individual claimants, bears the burden of proof in each case and thus has no incentive for delay. As T&N well knows, the long time lag between asbestos exposure and the onset of disease—and the often short time lag between the onset of certain asbestos-caused cancers and death—can create significant problems of proof for plaintiffs, especially where the testimony of the asbestos victim is unavailable. The implication that the Trust would gain any advantage from unnecessarily delaying the filing of a suit makes no sense. In fact, any delay by the Trust in filing suit redounds to the benefit of the Reinsurers defending this claim, who benefit by paying out policy proceeds later rather than sooner. *See Freakley v. Centre Reins. Int'l Co.*, 2004 WL 2775879, ¶¶ 33-35, [2004] EWHC 2740 (Ch) (Case No. 5798 of 2001, High Court of Eng. & Wales, Nov. 26, 2004) (construing Plan's effect on Hercules Policy provision that specifically protected the Reinsurers against acceleration, not delay, of payments); Jeffrey W. Stempel, *Assessing the Coverage Carnage: Asbestos Liability and Insurance After Three Decades of Dispute*, 12 CONN. INS. L.J. 349, 424-48 (2006) (delay may work to insurers' benefit).

20

Finally, the Plan does not rule out T&N's ability to assert common law timeliness defenses, like laches. *See Murphy v. Timberlane Reg'l Sch. Dist.*, 22 F.3d 1186, 1189 (1st Cir. 1994); *see also Niehoff v. Maynard*, 299 F.3d 41, 52 n.10 (1st Cir. 2002) ("Whether one calls it statute of limitations or laches or unreasonable delay, a defendant is always entitled to argue to the court that a plaintiff has waited too long to vindicate his or her rights."). Section § 4.5.8(e) of the Plan preserves T&N's right to argue for any defense to liability, including any other timeliness defense to which it believes it is entitled. That T&N's preferred timeliness defense does not apply to Mrs. Barraford's case at this time does not make that section a "nullity." (T&N Br. at 57.)

## VII. THE PLAN SET UP A STRUCTURE TO PRESERVE LIABILITY FOR THOUSANDS OF CLAIMS, NOT TO GUARANTEE THEY WOULD LAPSE

What T&N characterizes as "Policy Arguments" (T&N Br. at 46) are in fact arguments about how the deal that allowed T&N to emerge from bankruptcy was meant to work. T&N carefully constructed the Plan to preserve the viability of claims under the Hercules Policy so that T&N and its parent company and affiliates could emerge from bankruptcy in 2007, rather than years later, after the litigation of all asbestos claims against it.

T&N now argues that it could have found other ways to preserve the Hercules Policy proceeds. (T&N Br. at 61 ("T&N … could have remained … in

chapter 11 longer," "the Trust could have been created … sooner," or T&N could have "delay[ed] discharge … for *all* claims").) Leaving aside that it is not T&N but the Reinsurers who are making the argument, whether or not T&N could have found other ways (and there are reasons why it did not), it didn't. It used this way. This way is not only permissible but preferred, so that debtors may emerge from reorganization sooner. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 808 (9th Cir. 1994) (rejecting defendant's interpretation because otherwise, "debtors undoubtedly would delay filing plans of reorganization until completing all potential litigation, a result that would contravene the Bankruptcy Code's goal of quick and equitable reorganization.").

T&N also argues that the Plan it proposed could have been more explicit about the automatic stay. Hindsight is always 20-20. As T&N recognizes, its Plan was unique (T&N Br. at 66), "atypical," like the *Hillis Motors* plan. In advancing new means to deal with unprecedented complex legal problems, perfection is not required where purpose and intent are sufficiently clear. *Hillis Motors*, 997 F.2d at 589 ("atypical" plan provision was not "unambiguous").

The irony, of course, is that it is T&N advancing all the different things *it* could have done differently to strengthen or clarify its own Plan. Equity does not now permit it to argue that the Plan it proposed, drafted, and confirmed

22

did not implement the deal that it adopted to emerge from bankruptcy sooner rather than later.

T&N also argues, "It is implausible that the Plan would have created fiduciary duties for the Trust while simultaneously making it impossible to fulfill those duties." (T&N Br. at 52.) The Trust agrees. Yet T&N's interpretation of its own Plan would do just that. Under T&N's interpretation, the Plan wiped away thousands of claims for which the statute of limitations would have expired under nonbankruptcy law before the Effective Date—the same claims for which T&N's ongoing liability was expressly preserved by Plan § 4.5.6—by ensuring that the automatic stay would be lifted across the board on the Effective Date, the same day the Trust was created, and that the statute of limitations would expire 30 days later.[3] T&N attempts to downplay the practical implications of its theory: "the Trust could pursue … claims immediately after the Plan went into effect …." (T&N Br. at 59); the 30-day period "still provid[es] a fair time period in which the Trust could initiate otherwise time-barred actions" (*id*. at 60); and the Trust could "triage rapidly expiring or high-priority claims" (*id.* at 61). Its statements are unrealistic at best. Though the Trust was formed on the Effective Date (A792;

---

[3] The Trust has not forfeited any argument based on the consequences of T&N's interpretation of the Plan. (*See* T&N Br. at 60.) What each party's interpretation of the Plan would mean in practice is at the heart of the dispute over the Plan's interaction with the Bankruptcy Code. *See also supra* at 14-15.

A794), it had no staff, no mailing address, indeed, no capabilities of a functioning entity. Thousands of cases were "rapidly expiring." Thirty days for the Trust to bring thousands of lawsuits is hardly a *possible* time period, much less a *fair* one. T&N cannot plausibly argue that this was the manner in which its Plan was intended to operate.

       T&N's argument is even less realistic given its suggestion that the discharge may have occurred as early as November 8, 2007, the date of the Confirmation Order. (T&N Br. at 29 n.2; *see also id.* at 1 (stating that the automatic stay was lifted on December 27, 2007—the Effective Date—"at the latest").) If T&N were correct that the automatic stay terminated on November 8, 2007, then the 30-day extension under section 108(c) would have expired before the Trust was even created. That cannot possibly be the way the Plan was meant to work, but it is what T&N's interpretation would compel.

       T&N also contends that under the Trust's interpretation of the Plan, the Plan's section 524(g) channeling injunction is superfluous because the automatic stay itself would prevent "suits contrary to the plan's terms." (T&N Br. at 42.) That argument ignores the different scope of the automatic stay and the channeling injunction. The automatic stay protects only the debtor. 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. Alan N. Resnick & Henry J. Sommers, eds. 2014). A channeling injunction is not so limited and therefore protects third

24

parties. §524(g)(1); *see* Plan § 9.3.2 ("Third Party Injunction"), A665-67. Therefore, the channeling injunction is not rendered "superfluous" by the automatic stay's continued application to the un-discharged Asbestos Personal Injury Claims.

Finally, T&N accuses the Trust of asking the Court to do many things it is not asking for. The Trust is not asking the Court to amend the Plan or to read anything out of it, but only to interpret the Plan correctly and enforce it against its own sponsor. The Trust is not asking the Court either to limit or to expand the proper application of the Bankruptcy Code, but only to apply the Bankruptcy Code as written. Nor is the Trust asking the Court to decide the case on policy grounds. The Trust is not suggesting that the bankruptcy court (or this Court) has the authority to extend the automatic stay or any deadlines beyond what the Bankruptcy Code allows and the Plan provides. The Trust is not advocating a special rule for asbestos cases, but merely a straightforward reading of the Bankruptcy Code and the Plan based on how T&N, its affiliates, and its creditors structured the Plan to work with the Code.

## CONCLUSION

Now that it has emerged from bankruptcy and its defense is controlled by the Reinsurers, T&N is attempting to erase the claims of thousands of asbestos victims who were barred from filing their lawsuits while its bankruptcy case was

25

pending—the same claims that the Plan was structured to preserve so that they could be brought against T&N after its emergence from bankruptcy. In effect, T&N is asking this Court to grant it the discharge of asbestos liability that its Plan expressly withheld. This Court should reject T&N's strained reading of the Plan and the Bankruptcy Code.

The Trust respectfully asks this Court to reverse the District Court's grant of summary judgment.

September 10, 2014

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP

by

    /s/ Richard Levin
    Richard Levin (rlevin@cravath.com)
    Rowan D. Wilson (rwilson@cravath.com)

    825 Eighth Avenue
    New York, NY 10019
    (212) 474-1000

*Attorneys for Plaintiffs-Appellants*
*Nora M. Barraford and The Federal-*
*Mogul Asbestos Personal Injury Trust*

**Certificate of Compliance with Rule 32(a)**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,015 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007, in fourteen-point Times New Roman font.

September 10, 2014

CRAVATH, SWAINE & MOORE LLP

by
 /s/ Richard Levin
Richard Levin (No. 1163292)


825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiffs-Appellants Nora M. Barraford and The Federal-Mogul Asbestos Personal Injury Trust*

27

## CERTIFICATE OF SERVICE

On this 10th day of September 2014, I electronically filed the **REPLY BRIEF OF PLAINTIFFS-APPELLANTS NORA M. BARRAFORD AND THE FEDERAL-MOGUL ASBESTOS PERSONAL INJURY TRUST** in No. 14-1281 using the Court's Case Management/Electronic Case Filing system, which will send a "Notice of Docket Activity" to all counsel listed on the annexed **Service List**.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2014

/s/ Richard Levin
Richard Levin

**<u>Appellate Service List</u>**

Mark A. Perry
(mperry@gibsondunn.com)
Scott P. Martin
(smartin@gibsondunn.com)
Lindsay S. See
(lsee@gibsondunn.com)

Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036


Timothy John Durken
(tdurken@jagersmith.com)
Steven C. Reingold
(sreingold@jagersmith.com)
Bruce Francis Smith
(bsmith@jagersmith.com)

Jager Smith PC
1 Financial Center
Boston, MA 02111


Edward William Murphy
(tmurphy@morrisonmahoney.com)

Morrison Mahoney LLP
250 Summer Street
Boston, MA 02210

*Counsel for Defendants-Appellees T&N Limited and
TAF International Limited*